UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENISE E. KINSORA,                          Case No. 09-11507

       Plaintiff,                       Nancy G. Edmunds
v.                                          United States District Judge

COMMISSIONER OF                             Michael Hluchaniuk
SOCIAL SECURITY,                            United States Magistrate Judge

       Defendant.
_____/

## REPORT AND RECOMMENDATION
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 8, 11)

**I.      PROCEDURAL HISTORY**

    A.      <u>Proceedings in this Court</u>

On April 22, 2009, plaintiff filed the instant suit seeking judicial review of

the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant

to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Nancy G.

Edmunds  referred this matter to the undersigned for the purpose of reviewing the

Commissioner's decision denying plaintiff's claim for a period of Disability

Insurance Benefits (DIB) and Supplemental Security Income (SSI).  (Dkt. 3).  This

matter is currently before the Court on cross-motions for summary judgment.

(Dkt. 8, 11).

B.    Administrative Proceedings

Plaintiff filed the instant claims on October 22, 2003, alleging that she became unable to work on March 1, 2001.  (Dkt. 7, Tr. at 65E).  The claim was initially disapproved by the Commissioner on February 23, 2004.  (Dkt. 7, Tr. at 40).  Plaintiff requested a hearing and on October 3, 2005, plaintiff appeared with counsel before Administrative Law Judge (ALJ) Melvyn B. Kalt, who considered the case *de novo*.  In a decision by the Appeals Council dated March 23, 2006, the ALJ found that plaintiff was not disabled.  (Dkt. 7, Tr. at 29-39).  Plaintiff requested a review of this decision on May 12, 2006.  (Dkt. 7, Tr. at 66A).  The Appeals Council granted plaintiff's request for review and remanded the case to an ALJ for further proceedings.  (Dkt. 7, Tr. at 66D).  A new administrative hearing was held on September 20, 2007, at which plaintiff appeared with counsel before ALJ Kalt.  In a decision by the Appeals Council dated January 16, 2008, the ALJ again found that plaintiff was not disabled.  (Dkt. 7, Tr. at 13-22).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on March 9, 2009.  (Dkt. 7, Tr. at 3C-5); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

In light of the entire record in this case, I suggest that substantial evidence does not support the Commissioner's determination that plaintiff is not disabled. Accordingly, it is **RECOMMENDED** that plaintiff's motion for summary

judgment be **GRANTED**, defendant's motion for summary judgment be **DENIED**,
that the findings of the Commissioner be **REVERSED**, and that this matter be
**REMANDED** for further proceedings.

## II.     STATEMENT OF FACTS

### A.     ALJ Findings

Plaintiff was 47 years of age at the time of the most recent administrative
hearing.  (Dkt. 7, Tr. at 75).  Plaintiff's relevant work history included
approximately 13 years as a baggage handler and dishwasher.  (Dkt. 7, Tr. at 75-
77).  In denying plaintiff's claims, defendant Commissioner considered chronic
low back pain, bilateral carpal tunnel syndrome, and depression as possible bases
of disability.  (Dkt. 7, Tr. at 16).

The ALJ applied the five-step disability analysis to plaintiff's claim and
found at step one that plaintiff had not engaged in substantial gainful activity since
March 1, 2002.  (Dkt. 7, Tr. at 16).  The ALJ does not appear to have made a clear
finding as to whether plaintiff's impairments were "severe" within the meaning of
the second step of the analysis.  At step three, the ALJ found no evidence that
plaintiff's combination of impairments met or equaled one of the listings in the
regulations.  *Id.*  At step four, the ALJ found that plaintiff could not perform her
previous work as a baggage handler .  (Dkt. 7, Tr. at 20).  At step five, the ALJ

denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy. (Dkt. 7, Tr. at 22).

Plaintiff was diagnosed with disc herniations at C3-4, C5-6, L4-5 and LS-SI. However, the ALJ noted that she consistently exhibited only mildly positive straight leg raising on the left, if at all, good strength throughout all the extremities, intact sensation, no muscle atrophy, no reflex loss, no motor loss and intact coordination. Therefore, the ALJ found that plaintiff did not have an impairment, or combination of impairments, which meet or equal any of the specific sections in the Listing of Impairments. In February 2004, the state disability consultant concluded that the claimant could perform light work and the ALJ found this assessment to be relatively consistent with the objective medical evidence. Plaintiff's treating physician indicated that she could perform light work with restrictions. Specifically, in June 2006, the treating physician indicated that the claimant was unable to sit for prolonged periods of time. In addition, plaintiff was evaluated for bilateral carpal tunnel syndrome. Thus, the ALJ concluded that plaintiff had the residual functional capacity for light work with the ability to alternate between sitting and standing as needed and carpal tunnel syndrome precautions such as no forceful grasping or torquing motions and no repetitive use of the hands.

Plaintiff testified that she suffered from depression and anxiety. She was diagnosed with an adjustment disorder with depression and anxiety. Therefore, the ALJ concluded that the evaluation of her functional capacity under section 12.04 (affective disorders) was warranted. The ALJ concluded that plaintiff did not exhibit significant limitations maintaining her activities of daily living. In September 2004, the evaluating psychiatrist noted the claimant was able to care for her two children, perform household chores, cook, drive, and would be able to manage benefit funds, which implies an ability to maintain a residence. In October 2005, the evaluating psychiatrist noted that the claimant was able to care for her personal needs and would be able to manage benefit funds. In October 2007, the evaluating psychiatrist noted that the claimant was able to care for her personal needs and would be able to manage benefit funds. Based on the foregoing, the ALJ concluded that plaintiff's degree of limitation with respect to her activities of daily living was rated "mild."

Next, the ALJ concluded that plaintiff did not exhibit significant limitations maintaining social functioning. In September 2004, the evaluating psychiatrist noted that the claimant was able to get along with coworkers, family, neighbors and friends. In October 2005, the evaluating psychiatrist concluded that the claimant would have marked difficulty dealing with the public, supervisors and coworkers based upon the claimant's allegations that she avoided going out and

stayed in her room. However, from March 2006 through November 2006, the ALJ found that plaintiff was noncompliant with counseling, which undercut her allegations of disabling anxiety. The ALJ also wrote that in "April 2006, the treating neurologist did not indicate that plaintiff had complained of marked difficulty interacting with others or that she spent most of the day in her room," citing, Exhibit 16F.[1] In October 2007, the evaluating psychiatrist indicated that plaintiff would have only mild limitations dealing with the public, supervisors or coworkers. Therefore, the ALJ concluded that "except for the evaluation in October 2005; all of the evaluating psychiatrists and neurologists have indicated only mild limitations maintaining social functioning." Based on the foregoing, the ALJ concluded that this degree of limitation was rated "mild."

The ALJ found that plaintiff exhibited some limitations maintaining concentration, persistence or pace. In September 2004, she exhibited good concentration and intact memory. In October 2005, plaintiff exhibited good concentration and intact memory and the evaluating psychiatrist concluded that she had no significant difficulty with simple tasks and only slight difficulty with detailed tasks. In September 2006, the treating neurologist noted that the

---

[1] There is no such reference in Exhibit 16F. Further, this physician did not complete the form that would contain these options. Rather, the ALJ seems to be suggesting that the absence of such a specific comment from this particular physician means that plaintiff did not make complaints that would satisfy the "marked" limitation in this area.

plaintiff's attention, concentration and memory were all normal. In October 2007, the evaluating psychiatrist indicated that plaintiff had no significant limitations with simple or detailed instructions. Nonetheless, the ALJ, giving the "benefit of the doubt" to plaintiff, found that this degree of limitation was rated "moderate."

Finally, the ALJ concluded that plaintiff never exhibited an episode of decompensation. Therefore, this degree of limitation was rated "none." According to the ALJ, plaintiff did not exhibit repeated episodes of decompensation and there was no evidence indicating that a minimal increase in mental demands would cause plaintiff to decompensate. In September 2004, the evaluating psychiatrist indicated that plaintiff tended to exaggerate her symptoms and that there were no objective signs of anxiety or depression. In October 2005, while plaintiff complained of frequent anxiety attacks and that she avoided leaving the house, throughout 2006, she was noncompliant with counseling. Moreover, in June 2007, plaintiff denied anxiety or depression. In October 2007, the evaluating psychiatrist indicated only mild to moderate limitations regarding overall functioning. Thus, the ALJ concluded that § 12.04 (C) was not met.

According to the ALJ, plaintiff exhibited only mild limitations maintaining her activities of daily living and social functioning and moderate difficulty maintaining concentration, persistence or pace. Therefore, he found that she was

limited to only simple 1-2-3 step operations. With these limitations, the vocational expert testified that, if plaintiff could perform light work with the ability to alternate between sitting and standing as needed; no forceful grasping or torquing motions, no repetitive use of the hands, and only simple 1-2-3 step operations, then she could perform work as a cashier and visual inspector, of which there were 3000 and 2000 such jobs, respectively, in southeastern Michigan. According to the ALJ, the vocational expert testified that these job titles are specifically listed in and consistent with the Dictionary of Occupational Titles. The vocational expert also testified that, even if plaintiff was further restricted to work that did not involve interaction with the public or close contact with supervisors and coworkers, then she could still perform work as a visual inspector of which there are 1,500 such jobs in southeastern Michigan. According to the ALJ, this constituted a significant number of jobs, the Commissioner has met his burden and a finding of "not disabled" is warranted.

B.      Parties' Arguments

1.      Plaintiff's claims of error

Plaintiff first claims that the ALJ's failure to ask the vocational expert whether jobs identified were consistent with the Dictionary of Occupational Titles is reversible error. (Dkt. 8, p. 13). Plaintiff also claims that the ALJ's RFC finding and the hypothetical question posed to the vocational expert did not accurately

portray plaintiff's limitations. From a physical standpoint, plaintiff contends the ALJ omitted postural limitations that a state agency physician opined she had in a physical residual functional capacity assessment dated February 17, 2004. (Tr. 136- 143). Specifically, the state agency physician opined that plaintiff could only occasionally stoop and crouch. (Tr. 138). According to plaintiff, the ALJ not only failed to address these postural limitations in his RFC finding and hypothetical question to the VE, but he failed to address why he discounted these limitations in his decision denying benefits. Further, plaintiff argues that these postural limitations are appropriate in light of plaintiff's long documented history of lower back problems.

From a psychiatric standpoint, plaintiff contends that the ALJ omitted a mental limitation a state agency psychiatrist opined she had in a mental medical source statement dated October 24, 2007. (Tr. 491- 493). Specifically, the state agency psychiatrist opined that plaintiff had a moderate limitation in the area of responding appropriately to usual work situations and to changes in a routine work setting. (Tr. 492). The medical source statement defined a "moderate" limitation as "more than a slight limitation in this area but the individual is still able to function satisfactorily." (Tr. 491). Plaintiff asserts that the ALJ not only failed to address this mental limitation in his RFC finding and hypothetical question to the VE, but he failed to address why he discounted this limitation in his decision

denying benefits.  Plaintiff requests that this matter be remanded under sentence four of 42 U.S.C. § 405(g) for a *de novo* hearing before an administrative law judge.

2.     Commissioner's counter-motion for summary judgment

According to the Commissioner, contrary to plaintiff's claim, the hypothetical question the ALJ asked the VE, and the corresponding answer the ALJ relied on, was adequate and proper because it included all of plaintiff's substantiated impairments and resultant limitations.  The Commissioner asserts that the hypothetical question posed by the ALJ to the VE took into consideration the limitations that accurately reflected plaintiff difficulties and that were supported by the record as a whole.  (Tr. 536-37).  Based on the evidence of record, the ALJ reasonably determined that, because of her impairments, plaintiff could do light work with the ability to alternate between sitting and standing as needed, no forceful grasping or torquing motions, no repetitive use of the hands, and only 1-2-3 step operations.  (Tr. 19-21, 536-37).  The Commissioner urges the Court to conclude that the ALJ reasonably did not include the limitations provided by the state agency physician of only being able to occasionally stoop and crouch.  (Tr. 138).  Contrary to plaintiff's assertion, the Commissioner argues that the ALJ considered and discussed the February 2004 opinion of the state agency physician that plaintiff could perform light work.  (Tr. 19).  The ALJ relied on this opinion

because it was "relatively consistent with the objective medical evidence," but he reasonably did not include the limitation of occasionally having to stoop or crouch in his RFC determination and in his hypothetical question to the VE. (Tr. 19-21). The ALJ reasonably determined plaintiff could do a range of light work. (Tr. 19-21). However, if plaintiff can stoop or crouch occasionally, the sedentary and light occupational base remains virtually intact. (Dkt. 11, citing, SSR 85-15). In determining that plaintiff could perform light work, the ALJ necessarily determined that plaintiff could occasionally stoop and crouch, and it was not necessary to include those limitations in the hypothetical question.

According to the Commissioner, the "ALJ also reasonably never included the limitations provided by the state agency psychiatrist of plaintiff having a moderate limitation of responding appropriately to usual work situations and to changes in a routine work setting" and, at the same time, the "ALJ did, however, consider all of the mental medical evidence, including a moderate limitation of responding appropriately to ususal work situations and to changes in a routine work setting, and he reasonably determined that Plaintiff could do simple 1-2-3 step operations." (Tr. 19-20, 490-92). The ALJ determined that plaintiff had a depressive disorder that resulted in her having mild restrictions in the activities of daily living and in maintaining social functioning. (Tr. 19, 490, 492). The ALJ also found plaintiff had moderate difficulties in maintaining concentration,

persistence, or pace, and never had any episodes of deterioration or decompensation of extended duration. (Tr. 20, 491-92). Based on those functional limitations, the ALJ reasonably determined that because of her depressive disorder, plaintiff could do work that was simple with 1-2-3 step operations. (Tr. 22). Based on all the evidence of record, the ALJ reasonably determined plaintiff could do light work with the ability to alternate between sitting and standing as needed, no forceful grasping or torquing motions, no repetitive use of the hands, and only 1-2-3 step operations. (Tr. 19-21, 536-37). Substantial evidence supports the ALJ's mental RFC determination. When the ALJ incorporated plaintiff's substantiated limitations into his hypothetical question, the VE testified that such a person like plaintiff could perform about 5,000 jobs as a cashier and visual inspector. (Tr. 537). Substantial evidence, according to the Commissioner, therefore, supports the ALJ's determination that there was a significant number of jobs that plaintiff could perform.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The

administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant

when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502

F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the

claimant are to be given great weight, particularly since the ALJ is charged with

observing the claimant's demeanor and credibility.") (quotation marks omitted);

*Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is

appropriate where an ALJ finds contradictions among medical reports, claimant's

testimony, and other evidence.").  "However, the ALJ is not free to make

credibility determinations based solely upon an 'intangible or intuitive notion

about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting, Soc. Sec.

Rul. 96-7p, 1996 WL 374186, *4.

      If supported by substantial evidence, the Commissioner's findings of fact are

conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in

the record substantial evidence to support a different conclusion."  *McClanahan v.

Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800

F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a

scintilla of evidence but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.     <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq.*) and the

Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381

*et seq.*).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    Analysis and Conclusions

The ALJ determined that plaintiff possessed the residual functional capacity to return to a limited range of light work. (Tr. at 22).

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are

additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. 404.1567(b).  Social Security Ruling (SSR) 83-10 clarifies this definition and provides that:

> "Occasionally" means occurring from very little up to one-third of the time.  Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday.  Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion.  *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

### 1.  Postural limitations

From a physical standpoint, plaintiff contends the ALJ omitted postural limitations that a state agency physician opined she had in a physical residual functional capacity assessment dated February 17, 2004.  (Tr. 136- 143).  Specifically, the state agency physician opined that plaintiff could only occasionally stoop and crouch.  (Tr. 138).  According to plaintiff, the ALJ not only

failed to address these postural limitations in his RFC finding and hypothetical question to the VE, but he also failed to address why he discounted these limitations in his decision denying benefits. Further, plaintiff argues that these postural limitations are appropriate in light of plaintiff's long documented history of lower back problems. The Commissioner asserts that the ALJ reasonably did not include the limitation of occasionally having to stoop or crouch in his RFC determination and in his hypothetical question to the VE because, in determining that plaintiff could perform light work, the ALJ necessarily determined that plaintiff could occasionally stoop and crouch, and it was not necessary to include those limitations in the hypothetical question, citing SSR 85-15.

"Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays [the] plaintiff's individual physical and mental impairments." *Varley v. Sec'y of Health & Hum. Serv.*, 820 F.2d 777, 779 (6th Cir. 1987) (internal citations omitted); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 632 (6th Cir. 2004). At the second hearing, the ALJ posed the hypothetical question to the vocational expert as follows:

> Q. * * * Mr Fuller we've previously determined that the claimant's past work was unskilled work as a dishwasher was at medium level, and a baggage handler was at the heavy level. If I were to find that the claimant was limited, lifting no more than ten pounds repeatedly, twenty pounds occasionally, that she had the

ability to alternate between sitting and standing with limited to simple, one, two, and three step operations and is precluded from any work that required repeated forceful grasping, torqueing movements or any type of repeated use of the hands. Would there be any work that she could perform? Clearly, she could not return to her past work.

A.     Your honor, there would be a limited number of cashier and visual inspection jobs. I would say 3,000 cashier and 2,000 inspection jobs.

Q.     Is there anything about the claimant's testimony that would preclude the performance of these jobs?

A.     The described need to lay down throughout the day. Being able to sit/stand in combination no more than 30 minutes at a time.

Q.     Without having to lie down.

A.     Yes, Your Honor. That's what, what I understood.

Q.     But sitting and standing but being able to make it through an eight-hour day with appropriate rest periods is different, then?

A.     Yes Your Honor.

Q.     All right, so just to review. If the claimant's testimony is fully credited, there would be no work that she could perform. If we take in to account her testimony with respect to an inability to make it through an eight-hour day. If the answer to the hypothetical question I gave you would allow her to perform the cashier and inspection jobs. Is that correct?

A.     That's correct.

(Tr. 536-537).

The undersigned suggests that, where the ALJ found the examining physician's opinion consistent with other medical evidence of record, there was no basis to exclude the postural limitations from the hypothetical question. The undersigned is not persuaded by the Commissioner's argument that in finding that plaintiff could do light work, the ALJ is presumed to have taken plaintiff's postural limitations into account. "Nonexertional limitations can affect the abilities to reach; to seize, hold, grasp, or turn an object (handle); to bend the legs alone (kneel); to bend the spine alone (stoop) or bend both the spine and legs (crouch)." *See* SSR 85-15, 1985 WL 56857 (S.S.A. 1985). As recognized in SSR 85-15, nonexertional impairments may or may not affect a person's capacity to carry out the primary strength requirements of jobs, and they may or may not significantly narrow the range of work a person can do. While it is true that jobs that can be performed by persons with *solely* nonexertional limitations cut across the categories of sedentary to heavy work, (*id.*), the ALJ did not find that plaintiff had *solely* nonexertional limitations, as evidenced by his finding that she could not perform her former work. The Commissioner's reliance on SSR 85-15 for the proposition that "light work" includes the postural limitations found by the state agency examiner is, therefore, misplaced. The VE's testimony, on which the ALJ relied, is "tainted by the omission of key postural limitations in the hypothetical question." *Ritter v. Comm'r of Soc. Sec.*, 2010 WL 1064415, *7 (E.D. Mich.

2010), aff'd, 2010 WL 1064411, citing, *Teverbaugh v. Comm'r of Soc. Sec.*, 258 F.Supp.2d 702, 706 (E.D. Mich. 2003). The undersigned suggests that the ALJ's failure to include plaintiff's postural limitations in the hypothetical question constitutes reversible error.

## 2. Mental impairment

As to an allegedly disabling mental impairment, the Commissioner has promulgated a special technique to ensure that all evidence needed for the evaluation of such a claim is obtained and evaluated. This technique was designed to work in conjunction with the sequential evaluation process set out for the evaluation of physical impairments. 20 C.F.R. §§ 404.1520a, 416.920a. Congress laid the foundation for making disability determinations when mental impairments are involved in 42 U.S.C. § 421(h), which provides:

> An initial determination under subsection (a), (c), (g), or (I) of this section that an individual is not under a disability, in any case where there is evidence which indicates the existence of a mental impairment, shall be made only if the Commissioner has made every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment.

Section 404.1520a explains in detail the special procedure and requires the completion of "a standard document outlining the steps of this procedure." 20 C.F.R. § 404. 1520a(d). The regulation further requires the standard document to

be completed and signed by a medical consultant at the initial and reconsideration levels, but provides other options at the administrative law judge hearing level. *Id.* Under this procedure, the Commissioner must first make clinical findings, as to whether the claimant has a medically determinable mental disorder specified in one of eight diagnostic categories defined in the regulations. *Merkel v. Comm'r of Social Security*, 2008 WL 2951276, *10 (E.D. Mich. 2008), citing, 20 C.F.R. Pt. 404. Subpt. P, App. 1, § 12.00A.

The Commissioner must then measure the severity of any mental disorder; that is, its impact on the applicant's ability to work. "This is assessed in terms of a prescribed list of functional restrictions associated with mental disorders." *Merkel*, at *10, citing, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C. The first area of functional restriction is "activities of daily living." This area requires the Commissioner to determine the claimant's ability to clean, shop, cook, take public transportation, maintain a residence and pay bills. *Merkel*, at *10. Under the second functional area, "social functioning," the Commissioner must determine whether the claimant can interact appropriately and communicate effectively and clearly with others. *Id.* The third functional area, "concentration, persistence, or pace," refers to the claimant's ability to sustain focused attention sufficiently long to permit the timely completion of tasks found in work settings. *Id.* The final functional area, that of "deterioration or decompensation in work or work-like

settings," refers to the claimant's ability to tolerate increased mental demands associated with competitive work. *Id*.

The degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace) is rated using a five-point scale: none, mild, moderate, marked, and extreme. *Pauley v. Comm'r of Social Security*, 2008 WL 2943341, *9 (S.D. Ohio 2008). The degree of limitation in the fourth functional area (episodes of decompensation) is rated using a four-point scale: none, one or two, three, four or more. *Id*. "The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity." *Pauley*, at *9, citing, 20 C.F.R. § 404. 1520a(c)(4). Ratings above "none" and "mild" in the first three functional areas and "none" in the fourth functional area are considered severe. *Pauley*, at *9, citing, 20 C.F.R. § 404.1520a(d)(1). If the first two functional areas receive ratings of "none" or "slight," the third a rating of "never" or "seldom," and the fourth a rating of "never," the Commissioner will conclude that the mental impairment is not severe, and that it cannot serve as the basis for a finding of disability. *Merkel*, at *10, citing, 20 C.F.R. §§ 404.1520a(c)(1), 404.1521.

If the functional areas indicate that the mental impairment is "severe," the Commissioner must decide whether it meets or equals a listed mental disorder. *Merkel*, at *10, citing, 20 C.F.R. § 404.1520a(c)(2). The Commissioner will

determine that the claimant is disabled if the mental impairment is a listed mental disorder and at least two of the criteria have been met. *Merkel*, at *10, citing, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02, *et. seq.* If the severe mental impairment does not meet a listed mental disorder, the Commissioner must perform a residual functional capacity assessment to determine whether the claimant can perform some jobs notwithstanding his mental impairment. *Merkel*, at *10, citing, 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

Even if the failure to include plaintiff's postural limitations in the hypothetical question is not reversible error, the ALJ also failed to explain why he disregarding the opinion of the state agency physician who found that plaintiff had "marked" limitations. In October 2005, the evaluating psychiatrist concluded that the claimant would have marked difficulty dealing with the public, supervisors and coworkers based on the claimant's allegations that she avoided going out and stayed in her room. The ALJ also wrote that in "April 2006, the treating neurologist did not indicate that plaintiff had complained of marked difficulty interacting with others or that she spent most of the day in her room," citing, Exhibit 16F. As noted above, the ALJ seems to be suggesting that the absence of such a specific comment from this particular physician means that plaintiff did not make complaints that would satisfy the "marked" limitation in this area. In October 2007, the evaluating psychiatrist indicated that plaintiff would have only

mild limitations dealing with the public, supervisors or coworkers.  Therefore, the ALJ concluded that "except for the evaluation in October 2005; all of the evaluating psychiatrists and neurologists have indicated only mild limitations maintaining social functioning."

The ALJ essentially used the absence of any comment regarding plaintiff's mental limitations in the neurologist's report from April 2006 to tip the scales in favor of a finding of only a mild limitation in social functioning.  It is apparent from the April 2006 neurological examination that plaintiff's mental limitations were simply not addressed.  Thus, the ALJ offers no explanation based on the record evidence for choosing between 2005 psychiatric evaluation and the 2007 psychiatric evaluation other than plaintiff's apparent failure to comply with counseling efforts.  The ALJ gave no consideration as to whether and to what extent plaintiff's mental impairments impacted both her capacity to seek treatment regularly or to comply with recommended treatment.  *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989) ("[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.").  And, the failure to seek treatment for a period of time may be a factor to be considered against a claimant, *Hale v. Sec'y of Health and Hum. Serv.*, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy her condition, *McKnight v. Sullivan*, 927 F.2d 241,

242 (6th Cir. 1990). The ALJ also gave no consideration to whether and to what extent that plaintiff's financial situation impaired her ability to obtain regular treatment or to comply with recommended treatments. Under the circumstances, the undersigned suggests that the ALJ failed to give sufficient reasons for his finding that plaintiff was "mildly" impaired with respect to social functioning and suggests that this issue should be re-examined on remand.

3.     SSR 00-4p

Plaintiff argues that the ALJ failed to identify and resolve any conflicts pursuant to SSR 00-4p. SSR 00-4p requires that:

> When a VE ... provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations the adjudicator will:
>
> Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and
>
> If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00-4p is used "[w]hen there is an apparent unresolved conflict between VE ... evidence and the DOT." *Zinis v. Comm'r of Soc. Sec.*, 2009 WL 261474, *10 (E.D. Mich. 2009). "[W]here there is no unresolved conflict, the ALJ's failure to ask the VE whether his testimony is consistent is not reversible error or even error

requiring remand." *Kreh v. Comm'r of Soc. Sec.*, 2008 WL 4534177, citing, *Rowe v. Astrue*, 2008 WL 1711538, at *3 (E.D. Ky. 2008) (where hypothetical accurately reflected plaintiff's limitations and ALJ was unaware of any conflict, ALJ was under no duty to explain how conflict was resolved); *Winstead v. Comm'r*, 2008 WL 819073, at *15-16 (S.D. Ohio 2008) (where question posed to VE accurately reflected plaintiff's limitations, plaintiff's contention that ALJ erred in failing to inquire into possible conflicts was without merit). While the plaintiff does not identify any inconsistency or conflict, given the foregoing recommendations that plaintiff's postural limitations and mental impairment should be re-evaluated, it would also be wise, on remand, for the ALJ to consider whether the vocational evidence is consistent with the DOT and make further inquiry on this issue to the extent necessary.

### 4. Conclusion

After review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, was not within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is unsupported by substantial evidence. While this record may not justify a remand

for an award of benefits, *see Faucher v. Sec'y of Health and Human Serv.*, 17 F.3d 171, 176 (6th Cir. 1994),[2] a remand is nonetheless required.

## IV.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence does not support the Commissioner's determination that plaintiff is not disabled. Accordingly, it is **RECOMMENDED** that plaintiff's motion for summary judgment be **GRANTED**, defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health*

---

[2]  "If a court determines that substantial evidence does not support the Secretary's decision, the court can reverse the decision and immediately award benefits *only if* all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits."  *Faucher*, 17 F.3d at 176 (emphasis added).

*and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

s/Michael Hluchaniuk
Michael Hluchaniuk
United States Magistrate Judge

Date: July 23, 2010

# CERTIFICATE OF SERVICE

I certify that on July 23, 2010, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Joseph E. Houle, Judith E. Levy, AUSA, and Commissioner of Social Security.

s/Darlene Chubb
Judicial Assistant
(810) 341-7850
darlene_chubb@mied.uscourts.gov